# McDonald v. Ellsworth Collieries Company, Appellant.

*Negligence—Master and servant—Respondeat superior—Scope of employment—Evidence—Question for jury.*

In an action for damages for the death of plaintiff's husband the case is for the jury and a verdict for plaintiff will be sustained where there is evidence justifying a finding that the death was caused by the negligence of one of defendant's servants, who in the course of his duties released the brakes upon eight loaded coal cars and permitted them to run down grade and strike other cars under which he had notice that decedent was working.

Argued Oct. 25, 1911. Appeal, No. 166, Oct. T., 1911, by defendant, from judgment of C. P. Washington Co., Aug. T., 1910, No. 279, on verdict for plaintiff in case of Zarildia McDonald v. The Ellsworth Collieries Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for death of plaintiff's husband.

The following opinion by McILVAINE, P. J., overruling defendant's motion for judgment non obstante veredicto, states the case:

In this case the husband of the plaintiff, Elizabeth McDonald, while working for the Pennsylvania Railroad Company was injured by a car running over him, so that he died. The plaintiff claims that the death of her husband was caused by the negligence of Angelo Sylvester who was an employee of the Ellsworth Collieries Company acting in the line of his duty at the time he negligently caused such injury, and that therefore the defendant company is liable to her and her children for the pecuniary loss they sustained by reason of her husband's death. The defendant company denied any liability for the act of Angelo Sylvester for the reason that at the time he performed the act com-

plained of he was acting as a volunteer for the Pennsylvania Railroad Company and at the suggestion of the railroad employee who was injured. There is no doubt that Angelo Sylvester was on the pay roll of the Ellsworth Collieries Company and that he performed the duty of trimming coal cars that had been loaded at their tipple, and after having trimmed them, of seeing that they were moved down to the point on the siding where the railroad company took them for transportation. As to the manner in which the accident happened that resulted in the death of McDonald, two theories were presented at the trial, both supported by testimony. These theories were given to the jury in the Charge of the Court in these words:

"Now, Gentlemen, there are two theories in this case that have been laid before you by counsel, each claiming that the evidence before you supports its theory. The plaintiff's theory is that McDonald went down to those six cars in the line of his duty to couple the airbrake hose, and that he was engaged in that duty, and that when he went down there these other eight or nine cars were standing up the track some distance and that there were no signs of them at that time being moved, and that he went in there under circumstances that justified him in believing that it was perfectly proper for him to do as he did, and that while he was in there fixing those cars, with his leg exposed outside the line of the cars, (where some of the witnesses that were standing at the telephone booth saw them) Angelo Sylvester notwithstanding McDonald was there between the cars where he might have been seen or where his leg might have been seen if he had looked, or where he might have seen him going just before he went in between the cars,—turned those eight or nine cars loose, releasing four brakes,— all of the brakes that were on the cars,—allowing them to go down there with force, thus endangering McDonald's life, and that the natural and probable result

of such action on his part took place, namely, McDonald was knocked down and run over and injured. And the plaintiff further claims that Angelo Sylvester while he was doing this was acting in the line of his duty, doing the work that he had been doing previously under the direction of the defendant coal company and while in their pay, and that that being true, under the law it is responsible for the negligence of its servant. Now, Gentlemen, if that was all true, then there would be a right of action here; that is, if you believe McDonald was there in the line of his duty working for the railroad company and that at the time he went in there he had no intimation that those eight cars above would be disturbed in any way, and that while he was in there Angelo Sylvester went on those cars and let them loose under circumstances showing that he knew or ought to have known that McDonald was down there, and ran those cars down by gravity without retaining any control of them so that he could stop them before they would disturb the six cars, and you further find that at that time he was a servant of the collieries company and was acting in the line of his duty and doing a thing there that they had assigned him to do or that he was accustomed to do under their directions,— why then I say there would be a right of action here on the part of the widow for negligence in having injured her husband in a way that caused his death,—negligence on the part of Angelo Sylvester which could be, under these facts, imputed to the company. Now, that is the plaintiff's claim.

"Now, the defendant's claim is quite the converse of that. They claim first that McDonald was responsible for what took place there. They claim further that Angelo Sylvester at the time he moved those eight cars down there was not acting in the line of his duty for the coal company but he was acting simply at the direction of McDonald himself as a matter of accommodation to him, and that it was the railroad's business

to see that those eight cars were gotten down there and that when Sylvester did it he was merely complying with the request of McDonald himself who was a railroad employee and that he brought this injury upon himself. They claim that when McDonald got off the engine, which brought the twenty-six coke cars down from Cokeburg and went up in the direction of this booth where these eight cars were standing, and that he then asked Sylvester to drop one car down which was all that was necessary to make out their load when added to the six and twelve that were below. They claim that Sylvester told him he could not drop one car down. The foreigner, not being well versed in English, expressed it in this way, 'because the track was bad.' But I think we can fairly infer that what he undertook to express in his broken English, was that the track as it got down so near to the bridge was almost level and that one car loosed from the front end of those nine cars would not run down there by gravity, and that that is what he meant. But at all events he said that he told him he could not do that, but that he would run the eight down there and then when the eight were down he could cut off the one; (the greater weight of the cars which were farther up on the grade forcing them down) and that he turned them loose in that way. Now, Sylvester claims also that he did not know that McDonald had gone down to the six cars, that he supposed that McDonald was waiting till he did what he was asked to do; that he was not there, and that the track down there was clear of everything except the six cars and some boys were about there, whom he ordered away before he let the eight go, and that the eight went down there, and, as he intended they should, with force, striking the six cars and shoving all of them down onto the level place beyond the bridge, and that that was not an uncommon thing to do; and I suppose there would be no negligence in that if they were sure the track was clear.

Now, if you believe the testimony of the defendant, why then the plaintiff could not recover for two reasons. In the first place, if McDonald had asked Sylvester to run those cars down and Sylvester told him he was going to do it, then it would be negligence on the part of McDonald to ignore the information he had in regard to that matter and go in between those cars where he could not see what was coming, because that would be taking a risk upon himself even if he might have expected the cars to be run down under control,— there was still danger of them bumping, and it is not safe to couple cars,—that is apparent,—when there is a liability of another train bumping up against the cars you are coupling, so he would be guilty of contributory negligence. And on the other hand, he could not recover, because if that was the way the thing was done, Sylvester who did the negligent act complained of, would be acting for him and to accommoate him; and if, as the defendant claims, these cars were standing there, these eight cars, for the railroad company to take away, and the railroad company was moving them down there for its purpose, and Sylvester was acting merely at the request of McDonald and with him and for him, then any negligence of Sylvester would be the negligence of a man that was working with McDonald, —a fellow servant, and the defendant collieries company would not be liable.

"Now, Gentlemen, it appears to the Court that the dispute here is on a question of fact. There is testimony here that tends to sustain each of these claims, and it is pretty hard to tell just where the colliery company's duties in assembling those cars stopped and where the railroad company's duty commenced; but it is somewhere, because evidently from the testimony, the colliery company maintained control over those cars for a time, because they had men employed to trim them and to drop them down, and while they were trimming them and dropping them down and acting

within the line of that direction, why then they would be servants of the colliery company doing that for which they were being paid and any negligence on the part of one of its employees that was the direct cause of an injury to a third party, that is a party that was not in their employ, it would be liable for."

We then left to the jury to determine the question of fact,—that is, whether Angelo Sylvester when he turned the cars loose that caused the accident, was acting in the line of his duty as an employee for the coal company, the defendant company, or whether he was acting for the time being as an assistant to McDonald who was an employee of the railroad company. The motion for judgment non obstante veredicto asks us to set aside the finding of the jury that Angelo Sylvester at the time he did the act complained of was an employee of the coal company and to find that he was acting as a fellow servant with McDonald, an employee of the railroad company.  After a careful reading of the testimony, we feel that for the Court to so decide would be usurping the powers of the jury.  The testimony clearly raised the question of fact which was submitted to the jury, and they having found against the defendant company, we are clearly of the opinion that the verdict of the jury should stand and that judgment should be entered thereon in favor of the plaintiff and against the defendant.

And now, June 27, 1911, the defendant's motion for judgment non obstante veredicto is overruled and judgment will be entered in favor of the plaintiff and against the defendant on the verdict of the jury, on the payment of the jury fee.

Verdict for plaintiff for $6,120 and judgment thereon.  Defendant appealed.

*Errors assigned* were in refusing binding instructions for defendant and in dismissing defendant's motion for judgment non obstante veredicto.

*R. W. Irwin,* with him *Jas. A. Wiley,* for appellant, cited: Towanda Coal Company v. Heeman, 86 Pa. 418; Flower v. Pennsylvania Railroad Company, 69 Pa. 210; Murphey v. Philadelphia Rapid Transit Company, 30 Pa. Super. Ct. 87; Connor v. Pennsylvania Railroad Company, 24 Pa. Super. Ct. 241.

*T. H. W. Fergus,* with him *Victor J. Levy,* for appellee, cited: Haughey v. Pittsburgh Railways Company, 210 Pa. 363; Connor v. Pennsylvania Railroad Company, 24 Pa. Super. Ct., 241.


PER CURIAM, January 2, 1912:

The judgment is affirmed on the opinion of Judge McIlvaine,